# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ERIE COUNTY NEW YORK,<br>92 Franklin Street, Buffalo, NY 14202,<br><br>      Plaintiff,<br><br>    v.<br><br>THE CORPORATION FOR NATIONAL AND COMMUNITY SERVICE, and JENNIFER BASTRESS TAHMASEBI, in her official capacity as interim agency head,<br>250 E Street SW, Washington, D.C. 20525<br><br>      Defendant. | Case No. 1:25-cv-783 |

**COMPLAINT**

## Introduction

1. In October 2023, Plaintiff Erie County, New York, applied for a grant from Defendant Corporation for National and Community Service ("Americorps"). The purpose of the grant—called an "RSVP" grant, or Retired and Senior Volunteer Program—is to support older people in the Buffalo area, who may struggle to get out of the home, by creating a network of senior volunteers to check in on their wellbeing and drop off homemade meals, a program commonly known as Meals on Wheels. In January 2024, Americorps approved the grant. One year worth of funding was to be distributed immediately, and the term of the grant would run three years so long as Erie County remained in compliance with the grant terms.

2. Since 1999, RSVP grant applicants have been required by Americorps regulations to "secure community participation in local project operation by establishing an Advisory Council . . . [o]f a diverse composition that reflects the demographics of the service area." 45 C.F.R. § 2553.24(a)(5). In compliance with this requirement, Erie County's 2023 application explained its efforts to secure the participation of Erie County's diverse population in its volunteer efforts.

3. On January 20, 2025, the President signed Executive Order 14151, titled "Ending Radical Government DEI Programs and Preferencing." The order, in relevant part, required federal agencies to ""terminate, to the maximum extent allowed by law, all . . . 'equity-related' grants or contracts" within sixty days. An order issued the following day required each agency to include "in every contract or grant award" a term that the contractor or grantee "certify that it does not operate any programs promoting DEI," or Diversity, Equity, and Inclusion, that would violate

federal antidiscrimination laws. The order does not define what it means by "equity related." And so, in compliance with this order, Americorps appears to have done what many other agencies across the government did: Search for the word "diverse" or "diversity" in grant applications and threaten those grantees, including Erie County, with termination unless they certify, on pain of False Claims Act liability, that they do not operate programs promoting DEI.

4. Americorps' threats violate the Administrative Procedures Act because they are arbitrary and capricious, and they violate the Constitution because they impose imprecise and unauthorized restrictions on federal funding to a local government. Erie County brings this action seeking injunctive and declaratory relief requiring Americorps to comply with its own rules and the United States Constitution.

**Parties**

5. Plaintiff Erie County, New York, is a municipal entity formed by the laws of New York. Its county seat is Buffalo.

6. Defendant Corporation for National and Community Service is an independent agency of the federal government known colloquially as Americorps. Americorps is headquartered in Washington, DC.

7. Defendant Jennifer Bastress Tahmasebi currently serves as interim agency head of AmeriCorps. She is sued in her official capacity.

## Jurisdiction and Venue

8. This Court has subject matter jurisdiction over this Action pursuant to 28 U.S.C. § 1331 because this Action arises under the Constitution and laws of the United States.

9. This Court may exercise personal jurisdiction over Americorps because it is headquartered in this District.

10. Venue is proper in this District under 28 U.S.C. § 1391(e)(1) because Americorps is an "agency of the United States" headquartered in this District.

## Background on Americorps and RSVP

11. Americorps was founded in 1993 to promote volunteerism and national community service, but RSVP traces its origins to the Older Americans Act of 1969, in which Congress sought to promote the involvement of older Americans (then defined as 60 years or older) in addressing local problems. By the late 1980's, more than 400,000 senior volunteers were serving in approximately 750 RSVP projects across the country, and by the mid-2000s into the present day RSVP programs have seen up to half a million volunteers working in a year in almost every state.

12. As RSVP has grown it scale, its goals have remained consistent: to meet critical community needs and to provide older adults with high-quality, meaningful volunteer experiences that enrich their lives and promote their health. RSVP does this through a wide range of volunteering activities, from delivering meals through the well-known Meals on Wheels program, to promoting disaster preparedness and helping older Americans with their taxes.

3

13. Each year, Americorps releases "Notices of Funding Opportunities" to alert the public to the availability of grants to support RSVP programs. To apply, a prospective grantee fills out a form through Americorps' eGrants online system, explaining how the applied-for funding will be used and why the grantee's proposal meets a detailed set of requirements explained in the Notice and in Americorps regulations. Prospective grantees are asked, among other things, to "[l]ist your organization's definitions of diversity, equity, inclusion, and accessibility and clearly describe how these values will be embedded in program implementation," and "[d]escribe the applicant's experience with, and plans for, supporting diversity, equity, inclusion, and accessibility within their organization."

14. In 1999, Americorps promulgated, after a notice-and-comment process, a final regulation requiring (among other things) that each grantee "shall secure community participation in local project operation by establishing an Advisory Council . . . [o]f a diverse composition that reflects the demographics of the service area." 64 F.R. 14133-01, 1999 WL 155145 (March 24, 1999), *amending* 45 C.F.R. § 2553.24. In the intervening 26 years, including the four years of the last Trump administration, this requirement appears to have generated neither any controversy nor any administrative problems of any kind for Americorps.

### The January 20 and 21st Executive Orders and Americorps' Implementation of Them

15. On January 20, 2025, President Trump signed an executive order directing government officials to eliminate "DEI," "DEIA," and "environmental justice" from the federal government, including by shuttering all "DEI," "DEIA," and

4

"environmental justice" offices, positions, and functions. EO 14151 § 2(b)(i). Order 14151 also directed "each agency, department, or commission head, in consultation with the Attorney General, the Director of OMB, and the Director of OPM . . . [to] terminate, to the maximum extent allowed by law, all . . . 'equity related' grants or contracts" within 60 days. *Id.* Also within 60 days, agencies must provide the OMB Director with lists of federal contractors who have provided DEIA training to the government and federal grantees who received funding "to provide or advance DEI, DEIA, or 'environmental justice' programs, services, or activities." *Id.* § 2(b)(ii). Order 14151 does not define "equity-related," does not explain what it means to advance "DEI, DEIA, or 'environmental justice' programs, services, or activities," or even what it means by "DEI," "DEIA," or "environmental justice."

16. On January 21, 2025, the President signed Executive Order 14173, titled "Ending Illegal Discrimination and Restoring Merit-Based Opportunity." Although this Order is primarily focused on private-sector grants, one of its key terms applies to all grantmaking across the federal government: "The head of each agency shall include in every contract or grant award . . . [a] term requiring such counterparty or recipient to certify that it does not operate any programs promoting DEI that violate any applicable Federal anti-discrimination laws."

17. Because "DEI" is not precisely defined, and because the applicability of federal anti-discrimination laws to programs in federal contracting is quite complex, *see, e.g., Students for Fair Admissions, Inc. v. President and Fellows of Harvard*

5

*College*, 600 U.S. 181 (2023), several agencies appear to have implemented the President's orders by running computer searches for phrases like "diversity" or "DEI."

**Americorps Arbitrarily and Capriciously Violates Its Own Rules And Seeks to Compel Erie County to Alter Its Successful RSVP Application**

18. Erie County's RSVP has been operating continuously since 1973. The program currently has over 50 active volunteer stations serving seniors throughout Erie County.

19. Approximately a third of the Erie County Department of Senior Services' budget comes from the federal government, mostly through grants funded by the Older Americans Act.

20. In October 2023, Erie County applied for a three-year RSVP grant for a total award of approximately $250,000.

21. To explain its compliance with Americorps rules, Erie County explained in its application that "Focused initiatives are underway directing a portion of our recruitment efforts to some of the more culturally diverse areas of our region. This effort should allow us to expand our base of volunteer membership to better reflect the diversity of Erie County."

22. Erie County further explained that "Being inclusive in our programs, events, recruitment and assignments will always remain intentional, transparent and accountable. No individual wishing to volunteer or participate in our program will be left behind. We will be diligent in our search for any future funding opportunities that would enable us to increase recruitment and retention with this diversity-focused expansion effort," and that "To increase our DEIA work, we are

6

actively working to recruit a diverse group to our Advisory Council to include more BIPOC [Black, Indigenous, and People of Color] members."

23. In January 2024, Americorps awarded Erie County the grant it sought. Erie County received the funds for its first year of operations shortly after the grant was approved.

24. But on February 14, 2025, Americorps sent Erie County a letter explaining that "Americorps is continuing to review all applicable executive orders, memoranda, and corresponding guidance issued since January 20, 2025, by President Trump . . . . Americorps is taking proactive action to ensure alignment with these directives and the Trump-Vance administration priorities."

25. "Based on this review," the letter continued, "the language below from your application requires clarification: . . . . The other narrative includes the following terms: DEI. The strengthening communities narrative includes the following terms: Diversity, Equity; DEI."

26. The letter gave Erie County three options: It could "reply all to this letter by email by February 19, 2025" and "copy and paste this statement . . . 'I certify that RSVP of Erie County . . . complies with all administration Executive Orders and does not include any activities that promote DEI activities.'" It could "initiate an amendment to [its] most recent award . . . and remove or update any language related to out of compliance activities." Or it could "relinquish the award."

27. In a subsequent guidance document, Americorps explained that grantees "must comply with all executive orders" including EO 14151 and EO 14173.

7

This document explained that "nonresponse may result in the termination of your awards."

28. At no point did Americorps rescind, or even cite, its own rules not only permitting but *requiring* grantees to promote diversity in their programs.

29. On February 20, 2025, Erie County responded to Americorps, writing: "Erie County proudly supports the Americorps Retired Senior Volunteer Program (RSVP) grant. RSVP staff are performing duties in line with Americorps guidelines. Our 450 volunteers have provided 37,000 hours of service to our community through partnership with 60 local organizations. The impact to our community and the wellbeing of our volunteers is overwhelmingly positive. Our administrative responsibilities continue to be informed by Americorps guidance. This includes any new volunteer orientation. Our selection and requirement of advisory board members will ensure well rounded representation of the community we serve. We look forward to a robust partnership moving forward."

30. The same day, in response, Americorps' regional portfolio manager wrote that "it is unclear if you have provided the statement below as a self-certification confirming that your Americorps RSVP program is deemed in compliance with the Executive Orders . . . . At this time, only the self-certification statement as originally provided is being accepted."

31. On February 24, 2025, Erie County's attorney emailed a copy of a temporary injunction against enforcement of Executive Order 14151 issued by the United States District Court for the District of Maryland. Erie County's attorney

asked that Americorps "please confirm that you will take no further action against Erie County . . . unless and until this Order is lifted."

32. In response, Americorps said that although "in accordance with the preliminary injunction, [it] will not take any action related to award terminations in relation to this review," it nonetheless demanded that Erie County "please continue with your review of your award, including submitting the self-certification or amendment, as applicable."

33. On March 11, 2025, Americorps wrote to Erie County: "Thank you for your response to the executive order compliance review process. AmeriCorps is aware of the preliminary injunction related to the two DEI-related executive orders. In accordance with the preliminary injunction, no additional action is needed at this time and you may continue with grant activities. Upon the resolution of the preliminary injunction AmeriCorps will follow up with additional instructions."

34. But the following day Americorps emailed Erie County to explain that further action *was* required to approve Erie County's *continuation* of its grant. Americorps attached to its March 12 email the same guidance document referenced attached as Exhibit A.

35. In response, Erie County asked if the March 12 email had issued in error.

36. Americorps responded that "The emails dated 3/12/2025 reference Executive Order Compliance Action Required and resolutions regarding your organization's proposed FY25 RSVP *Continuation* application. These review and

resolution actions must be addressed in order to continue processing this application, and are separate from the Executive Order review on your FY24 award."

37. In other words, although Americorps will not cancel funding immediately as it threatened to in its February 14 guidance document, it has nonetheless finally resolved to *impose* additional requirements on Americorps grants, which requirements are not authorized by law.

38. Because Erie County applied for its RSVP grant in compliance with Americorps rules that *require* Erie County to promote "divers[ity]," it cannot honestly certify that its grant "does not include any activities that promote DEI activities."

## Claim for Relief

### *Count One*: Violation of The Administrative Procedure Act (5 U.S.C. § 706(2)(A))

39. Erie County incorporates all prior paragraphs here.

40. Americorps, after awarding Erie County a grant pursuant to regulations that have been in place for 26 years, abruptly and without notice demanded that Erie County change the terms of its application and make certifications that are nowhere required by any existing law or regulation.

41. Although Americorps has temporarily indicated that it will not seek to freeze payment under the grant, it has made clear that its decision to impose additional requirements on the grant is final, and its action is therefore a final agency action.

42. Americorps' action is not supported by reasoning and was not subject to any notice-and-comment procedure.

43. Americorps' action in fact violates its own well-promulgated rules.

44. Americorps' action is, therefore, arbitrary and capricious, and not in accordance with law, and should be set aside by this Court.

*Count Two*: **Violation of The Spending Clause (U.S. Const., Art. I, Sec. 8, cl. 1)**

45. Erie County incorporates all prior paragraphs by reference here.

46. Americorps' action conditions federal funding on compliance with a fatally vague condition: whether a grant "promotes DEI," without defining what that is.

47. Americorps' action is unrelated to the purpose of the RSVP grant, which as Americorps' own rules show is meant to promote community engagement.

48. Although Americorps has temporarily agreed not to pause funding because of another court action, it has indicated that it will seek to terminate grants that do not meet its own subjective assessment of its new, non-rules-based, vague requirements.

49. The executive orders challenged in this case ostensibly apply to grants that amount to approximately one third of Erie County's senior-services budget.

50. Because Americorps' action violates the limitations imposed on the Federal Government's spending authority, this Court should enjoin Defendants from imposing requirements in compliance with Executive Orders 14151 and 14173.

11

## **Prayer for Relief**

Plaintiff Erie County, New York respectfully requests:

- That this Court enjoin and set aside Defendant Corporation for National and Community Service's imposition of grant requirements beyond those authorized by its own rules;
- That this Court enjoin Defendants Corporation for National and Community Service and its head Jennifer Bastress Tahmasebi from imposing grant requirements limiting the promotion of "DEI" and related terms as explained in Executive Orders 14151 and 14173;
- All other relief that this Court deems just and proper.


Respectfully submitted,

*/s/ Charles Gerstein*
Charles Gerstein
GERSTEIN HARROW LLP
1001 G Street NW, Suite 400E
Washington, DC 20001
charlie@gerstein-harrow.com
(202) 670-4809

*/s/ Jason Harrow*
Jason Harrow
GERSTEIN HARROW LLP
12100 Wilshire Blvd. Ste. 800
Los Angeles, CA 90025
jason@gerstein-harrow.com
(323) 744-5293

12