## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ERIE COUNTY, NEW YORK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:25-cv-783-JEB |
| | ) |
| THE CORPORATION FOR NATIONAL | ) |
| AND COMMUNITY SERVICE, and | ) |
| JENIFFER BASTRESS TAHMASEBI, | ) |
| in her capacity as interim agency head, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MOTION FOR A PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION

## <u>TABLE OF CONTENTS</u>

MOTION FOR PRELIMINARY INJUNCTION ........................................................... ii

INTRODUCTION ....................................................................................................1

FACTS ...................................................................................................................2

    A.    RSVP Grants And The Process For Winning Them ...............................2

    B.    Erie County's Participation in RSVP .....................................................4

    C.    Americorps' New Requirements And Litigation Against Them .............5

    D.    Erie County Cannot Comply With Americorps' Conflicting
        Directives ............................................................................................9

ARGUMENT..........................................................................................................10

    A.    Erie County Is Likely To Succeed on The Merits ...................................10

        1.    The new requirements are arbitrary and capricious...................10

        2.    The new requirements are a final agency action........................12

    B.    Erie County Will Suffer Irreparable Harm in The Absence of an
        Preliminary Injunction..........................................................................13

    C.    The Balance of The Equities And Consideration of The Public
        Interest Tip in Erie County's Favor .......................................................16

CONCLUSION ......................................................................................................16

i

## MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Erie County New York hereby moves this Court for a preliminary injunction that orders Defendants to determine Plaintiff is in compliance with all relevant grant requirements for existing RSVP grants, and to disburse immediately any funds to which it is entitled, without Plaintiff needing to certify that "RSVP of Erie County, 24SR260017 complies with all administration Executive Orders and does not include any activities that promote DEI activities," or make any other substantially similar certification referencing compliance with executive orders and promotion of DEI activities.

The reasons that Plaintiff is entitled to relief appear in the included memorandum of points and authorities, as well as the Complaint, any exhibits and evidence, and all other materials the court may consider.

Further, pursuant to Local Civil Rule 65.1(d), Plaintiff hereby requests a hearing within 21 days of this Motion, on the grounds that expedition is essential. In particular, as described further below in Argument Sections B and C, a local government entity is in jeopardy of losing meaningful federal funding to an important program. That, in turn, would cause irreparable harm to program participants and the existence of the program itself.

## INTRODUCTION

In October 2023, Plaintiff Erie County, New York, applied for a grant from Defendant Corporation for National and Community Service ("Americorps"). In January 2024, Americorps approved the grant. One year worth of funding was to be distributed immediately, and the term of the grant would run three years so long as Erie County remained in compliance with the grant terms. Since 1999, Retired and Senior Volunteer Program ("RSVP") grant applicants have been required by Americorps' own regulations to "secure community participation in local project operation by establishing an Advisory Council . . . [o]f a diverse composition that reflects the demographics of the service area." 45 C.F.R. § 2553.24(a)(5). In compliance with this requirement, Erie County's 2023 application explained its efforts to secure the participation of Erie County's diverse population in its volunteer efforts. But on February 12, 2025, in response to two executive orders, Americorps "review[ed]" Erie County's grant applications and concluded that because the application "includes the following terms . . . Diversity, Equity[, and] DEI," Erie County was required to do one of three things: It could "reply all to this letter by email by February 19, 2025" and "copy and paste this statement . . . 'I certify that RSVP of Erie County . . . complies with all administration Executive Orders and does not include any activities that promote DEI activities'"; it could "initiate an amendment to [its] most recent award . . . and remove or update any language related to out of compliance activities"; or it could "relinquish the award."

Meanwhile, on February 21, 2025, the United States District Court for the District of Maryland preliminarily enjoined federal agencies' compliance with the

1

executive orders on the grounds that they likely violate the First and Fifth Amendments without addressing whether the orders or agency actions implementing them violate the Administrative Procedures Act. *National Association of Diversity Officers in Higher Education v. Trump*, No. 25-CV-333 (D. Md.). In response to that preliminary injunction, Americorps agreed to suspend its review of Erie County's existing grant application. But Americorps maintained that Erie County's *renewal* application remained subject to the requirements of Americorps' February 12 action, and on March 18 the United States Court of Appeals for the Fourth Circuit stayed the *National Association* injunction pending appeal, *National Association of Diversity Officers in Higher Education v. Trump*, No. 25-1189, Dkt. No. 29 (4th Cir., Mar. 19, 2025). Erie County now faces the imminent harm of being forced to make a false certification or forfeit a grant to which it is entitled.

This Court should preliminarily enjoin Americorps and its interim agency head, Defendant Jennifer Bastress Tahmasebi, from enforcing its new grant requirements because they forbid what Americorps' own long-standing and validly passed rules require, because they will cause irreparable harm during the pendency of this case, and because the balance of the equities tips in Erie County's favor.

## FACTS

### A.    RSVP Grants And The Process For Winning Them

Americorps was founded in 1993 to promote volunteerism and national community service, but RSVP traces its origins to the Older Americans Act of 1969, in which Congress sought to promote the involvement of older Americans (then defined as 60 years or older) in addressing local problems. By the late 1980's, more

than 400,000 senior volunteers were serving in approximately 750 RSVP projects across the country, and by the mid-2000s into the present-day RSVP programs have seen up to half a million volunteers working in a year in almost every state. As RSVP has grown it scale, its goals have remained consistent: to meet critical community needs and to provide older adults with high-quality, meaningful volunteer experiences that enrich their lives and promote their health. RSVP does this through a wide range of volunteering activities, from delivering meals through the well-known Meals on Wheels program, to promoting disaster preparedness and helping older Americans with their taxes.

Each year, Americorps releases "Notices of Funding Opportunities" to alert the public to the availability of grants to support RSVP programs. To apply, a prospective grantee fills out a form through Americorps' eGrants online system, explaining how the applied-for funding will be used and why the grantee's proposal meets a detailed set of requirements explained in the Notice and in Americorps regulations. Prospective grantees are asked, among other things, to "[l]ist your organization's definitions of diversity, equity, inclusion, and accessibility and clearly describe how these values will be embedded in program implementation," and "[d]escribe the applicant's experience with, and plans for, supporting diversity, equity, inclusion, and accessibility within their organization." (Hoak Decl., Exh. J.)

In 1999, Americorps promulgated, after a notice-and-comment process, a final regulation requiring (among other things) that each grantee "shall secure community participation in local project operation by establishing an Advisory Council . . . [o]f a

diverse composition that reflects the demographics of the service area." 64 F.R. 14133-01, 1999 WL 155145 (March 24, 1999), *amending* 45 C.F.R. § 2553.24. In the intervening 26 years, including the four years of the last Trump administration, this requirement appears to have generated neither any controversy nor any administrative problems of any kind for Americorps.

### B.    Erie County's Participation in RSVP

Erie County, whose seat is Buffalo, is the largest county in Western New York. Erie County's RSVP has been operating continuously since 1973. The program currently has over 50 active volunteer stations serving seniors throughout Erie County. (Hoak Decl. ¶¶ 4–9.) Approximately a third of the Erie County Department of Senior Services' budget comes from the federal government, mostly through grants funded by the Older Americans Act. (Hoak Decl. ¶ 9.)

In October 2023, Erie County applied for a three-year RSVP grant for a total award of approximately $250,000. (Hoak Decl. ¶ 10.) To explain its compliance with Americorps rules, Erie County explained in its application that "Focused initiatives are underway directing a portion of our recruitment efforts to some of the more culturally diverse areas of our region. This effort should allow us to expand our base of volunteer membership to better reflect the diversity of Erie County." (Hoak Decl. Exh. A.) Erie County further explained that "Being inclusive in our programs, events, recruitment and assignments will always remain intentional, transparent and accountable. No individual wishing to volunteer or participate in our program will be left behind. We will be diligent in our search for any future funding opportunities that would enable us to increase recruitment and retention with this diversity-focused

expansion effort," (Hoak Decl. Exh. A), and that "To increase our DEIA work, we are actively working to recruit a diverse group to our Advisory Council to include more BIPOC [Black, Indigenous, and People of Color] members" (Hoak Decl. Exh. B).

In January 2024, Americorps awarded Erie County the grant it sought. Erie County received the funds for its first year of operations shortly after the grant was approved. (Hoak Decl. Exh. C.)

## C.    Americorps' New Requirements And Litigation Against Them

On January 20, 2025, President Trump signed an executive order directing government officials to eliminate "DEI," "DEIA," and "environmental justice" from the federal government, including by shuttering all "DEI," "DEIA," and "environmental justice" offices, positions, and functions. EO 14151 § 2(b)(i). The President directed "each agency, department, or commission head, in consultation with the Attorney General, the Director of OMB, and the Director of OPM . . . [to] terminate, to the maximum extent allowed by law, all . . . 'equity related' grants or contracts" within 60 days. *Id.* Also within 60 days, agencies must provide the OMB Director with lists of federal contractors who have provided DEIA training to the government and federal grantees who received funding "to provide or advance DEI, DEIA, or 'environmental justice' programs, services, or activities." *Id.* § 2(b)(ii). The President's order does not define "equity-related," does not explain what it means to advance "DEI, DEIA, or 'environmental justice' programs, services, or activities," or even what it means by "DEI," "DEIA," or "environmental justice." On January 21, 2025, the President signed Executive Order 14173, titled "Ending Illegal Discrimination and Restoring Merit-Based Opportunity." Although this Order is

primarily focused on private-sector grants, one of its key terms applies to all grantmaking across the federal government: "The head of each agency shall include in every contract or grant award . . . [a] term requiring such counterparty or recipient to certify that it does not operate any programs promoting DEI that violate any applicable Federal anti-discrimination laws."

On February 3, 2025, several non-profit organizations and the Mayor and City Council of Baltimore sued many federal agencies and their agency heads, alleging that Executive Orders 14151 and 14173 violate the spending clause, the Fifth Amendment, the First Amendment, and "the separation of powers." *National Association*, No. 25-CV-0333, Dkt. No. 1 (D. Md., Feb. 3, 2025). On February 21, 2025, the court enjoined implementation of the challenged executive orders. *Id.*, Dkt. No. 45. The government appealed and sought a stay pending appeal. *Id.* Dkts. No. 47, 48.

Meanwhile, on February 14, 2025, Americorps sent Erie County a letter explaining that "Americorps is continuing to review all applicable executive orders, memoranda, and corresponding guidance issued since January 20, 2025, by President Trump . . . . Americorps is taking proactive action to ensure alignment with these directives and the Trump-Vance administration priorities." (Hoak Decl., Exh. D.) "Based on this review," the letter continued, "the language below from your application requires clarification: . . . . The other narrative includes the following terms: DEI. The strengthening communities narrative includes the following terms: Diversity, Equity; DEI." (Hoak Decl. Exh. D.) The letter gave Erie County three options: It could "reply all to this letter by email by February 19, 2025" and "copy and

paste this statement . . . 'I certify that RSVP of Erie County . . . complies with all administration Executive Orders and does not include any activities that promote DEI activities.'" It could "initiate an amendment to [its] most recent award . . . and remove or update any language related to out of compliance activities." Or it could "relinquish the award." (Hoak Decl. Exh. D.) In a subsequent guidance document, Americorps explained that grantees "must comply with all executive orders" including EO 14151 and EO 14173. This document explained that "nonresponse may result in the termination of your awards." (Hoak Decl. E.) At no point did Americorps rescind, or even cite, its own rules not only permitting but *requiring* grantees to promote diversity in their programs.

On February 20, 2025, Erie County responded to Americorps, writing: "Erie County proudly supports the Americorps Retired Senior Volunteer Program (RSVP) grant. RSVP staff are performing duties in line with Americorps guidelines. Our 450 volunteers have provided 37,000 hours of service to our community through partnership with 60 local organizations. The impact to our community and the wellbeing of our volunteers is overwhelmingly positive. Our administrative responsibilities continue to be informed by Americorps guidance. This includes any new volunteer orientation. Our selection and requirement of advisory board members will ensure well rounded representation of the community we serve. We look forward to a robust partnership moving forward." (Hoak Decl. Exh. F.) The same day, in response, Americorps' regional portfolio manager wrote that "it is unclear if you have provided the statement below as a self-certification confirming that your Americorps

RSVP program is deemed in compliance with the Executive Orders . . . . At this time, only the self-certification statement as originally provided is being accepted." (Hoak Decl. Exh. F.)

On February 24, 2025, Erie County's attorney emailed a copy of the preliminary injunction against enforcement of Executive Orders 14151 and 14173 issued by the District of Maryland. Erie County's attorney asked that Americorps "please confirm that you will take no further action against Erie County . . . unless and until this Order is lifted." (Hoak Decl. Exh. G.) On March 11, 2025, Americorps wrote to Erie County: "Thank you for your response to the executive order compliance review process. AmeriCorps is aware of the preliminary injunction related to the two DEI-related executive orders. In accordance with the preliminary injunction, no additional action is needed at this time and you may continue with grant activities. Upon the resolution of the preliminary injunction AmeriCorps will follow up with additional instructions." (Hoak Decl. Exh. H.)

But two days later, after one additional request for clarification from the County, Americorps emailed Erie County to explain that further action *was* required to approve Erie County's *continuation* of its grant. (Hoak Decl. Exh. I.) Americorps attached to its March 12 email the same guidance document it had attached to its February 14 messages. Dkt. No. 1-1. Americorps explained that "The emails dated 3/12/2025 reference Executive Order Compliance Action Required and resolutions regarding your organization's proposed FY25 RSVP *Continuation* application. These review and resolution actions must be addressed in order to continue processing this

8

application, and are separate from the Executive Order review on your FY24 award."
(Hoak Decl. Exh. I.)

Later, on March 18, the Fourth Circuit stayed the District of Maryland's preliminary injunction. *National Association*, No. 25-1189, Dkt. No. 29 (4th Cir., March 18, 2025).

### D.     Erie County Cannot Comply With Americorps' Conflicting Directives

Erie County applied for its RSVP grant in compliance with Americorps rules that *require* Erie County to promote "divers[ity]." 45 C.F.R. § 2553.24. And Erie County completed its grant application as Americorps had asked it to: Erie County was to "[l]ist your organization's definitions of diversity, equity, inclusion, and accessibility and clearly describe how these values will be embedded in program implementation," and "[d]escribe the applicant's experience with, and plans for, supporting diversity, equity, inclusion, and accessibility within their organization." (Hoak Decl. Exhs. A, B, J.)

The primary purpose of Erie County's RSVP grant is to help Erie County seniors live happy and healthy lives. (Hoak Decl. ¶ 8.) To that end, Erie County remains willing to implement the measures required by Americorps to ensure the diverse participation of its community in those efforts, and it is just as willing to conduct its grant activities in a fully identity-blind way. (Hoak Decl. ¶ 22.) What Erie County cannot do is *both* of those things, because that is impossible: Americorps' February 12 action directly contradictions its 1999 rules. Erie County thus cannot honestly certify that its grant "does not include any activities that promote DEI

activities" because, in response to Americorps' own requests and rules, Erie County has already certified that its grant activities *do* promote "DEI activities." (Hoak Decl. Exhs. A, B.)

## ARGUMENT

"A party requesting a preliminary injunction must show that (1) it 'is likely to succeed on the merits'; (2) it 'is likely to suffer irreparable harm in the absence of preliminary relief'; (3) 'the balance of equities tips in [its] favor'; and (4) the issuance of a preliminary injunction 'is in the public interest.'" *Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*, 121 F.4th 1314, 1324 (D.C. Cir. 2024) (quoting *Changji Esquel Textile Co. Ltd. v. Raimondo*, 40 F.4th 716, 721 (D.C. Cir. 2022) (citations and quotations omitted)). "When the non-moving party is the Government, the[] [last] two considerations merge." *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 321 (D.D.C. 2020) (Boasberg, J.).

### A.   Erie County Is Likely To Succeed on The Merits

Erie County is likely to succeed on the merits of this dispute for the straightforward reason that Americorps' new grant requirements arbitrarily and capriciously forbid what Americorps' own rules require, and because imposing additional conditions on a grant is a final agency action.

#### 1.   *The new requirements are arbitrary and capricious*

Under the Administrative Procedures Act (APA), courts may "hold unlawful and set aside . . . agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Erie County is likely to succeed on the merits for the straightforward reason that Americorps' new

requirements are directly contrary to its own rules and, therefore, arbitrary and capricious.

"As far as the [APA] is concerned," then-judge Brown-Jackson explained, "this much is clear: a federal agency that . . . acts contrary to its own regulations is subject to having a federal court vacate its action as 'arbitrary [and] capricious.'" *Policy & Research, LLC v. U.S. Dep't of Health & Human Servs.*, 313 F. Supp. 3d 62, 67 (D.D.C. 2018) (Brown-Jackson, J.). And indeed many courts in this circuit have addressed circumstances in which agency actions require what agency rules forbid or vice versa or where they take actions that contradict their own rules. *See, e.g.*, *Nat'l Env't Dev. Assoc.'s Clean Air Project v. EPA*, 752 F.3d 999, 1009 (D.C. Cir. 2014) ("It is 'axiomatic,' however, 'that an agency is bound by its own regulations.'" (citations omitted)); *Panhandle Eastern Pipe Line Co. v. FERC*, 613 F.2d 1120, 1135 (D.C. Cir. 1979) (holding that an agency may not "play fast and loose with its own regulations"); *U.S. Lines, Inc. v. Fed. Mar. Comm'n*, 584 F.2d 519, 526 n.20 (D.C. Cir. 1978) ("Although it is within the power of [an] agency to amend or repeal its own regulations, [an] agency is not free to ignore or violate its regulations while they remain in effect.").

Americorps' challenged actions transparently violate their own rules. Since 1999, RSVP grant applicants have been required by Americorps' own regulations to "secure community participation in local project operation by establishing an Advisory Council . . . *[o]f a diverse composition* that reflects the *demographics* of the service area." 45 C.F.R. § 2553.24(a)(5). And yet Americorps now requires applicants

to "certify that the[ir application] . . . complies with all administration Executive Orders *and* does not include any activities that promote DEI activities." (Hoak Decl., Exh. D.) Thus, even if Americorps attempts to argue that the Executive Orders themselves forbid only DEI activities that would violate federal antidiscrimination laws on their own (as the Government argued in *National Association*), its action would still violate its own rules: Americorps now requires applicants both to certify that they are not "promoting DEI activities" while also certifying that they are establishing a board specifically chosen to reflect a "diverse" population.

## 2.    *The new requirements are a final agency action*

Although Americorps has apparently not yet decided whether to deny any of Erie County's pending or already-approved grant applications, Americorps' imposition of additional requirements on its grants is final agency action. *E.g.*, *City of Chicago v. Sessions*, 321 F. Supp. 3d 855, 865 (N.D. Ill. 2018) (explaining that where a "lawsuit does not challenge the [agency's] not-yet-finalized decision whether to award the funds, but rather the decision to attach the Conditions to the grant in the first instance," agency action is final), *aff'd sub nom. City of Chicago v. Barr*, 961 F.3d 882, 890 (7th Cir. 2020).

Under the APA, "two conditions must be satisfied for agency action to be 'final': First, the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted). Both conditions are met here. Americorps' decision is neither

tentative nor interlocutory: Americorps clearly explained that grant applicants must complete the required certifications and amendments or they will not be awarded RSVP grants, and Americorps guidance documents did not suggest any further decisionmaking was forthcoming. *See City of Chicago*, 321 F. Supp. 3d at 865 (citing *Bennett*, 520 U.S. at 177–78); *see also Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1022 (D.C. Cir. 2000) ("[A]ll laws are subject to change. . . [and] [t]he fact that a law may be altered in the future has nothing to do with whether it is subject to judicial review at the moment." (citation omitted)). And there is no question that Americorps' requirements trigger important legal obligations: they cause Erie County to face a classic "dilemma: comply with a rule that harms [it] and that [it] believe[s] to be invalid or violate the rule at the risk of incurring a heavy penalty." *Abbs v. Sullivan*, 963 F.2d 918, 926 (7th Cir. 1992); *see also City of Chicago*, 321 F. Supp. 3d at 865 (same).

### B. Erie County Will Suffer Irreparable Harm in The Absence of an Preliminary Injunction

Americorps' sudden departure from its own rules, which jeopardizes substantial federal funding, would cause the County irreparable harm if not enjoined. As another district court recently said in another case granting a preliminary injunction that paused an attempted federal funding freeze, "[i]t is so obvious that it almost need not be stated that when money is obligated and therefore expected . . . and is not paid as promised, harm follows—debt is incurred, debt is unpaid, essential health and safety services stop, and budgets are upended." *New York v. Trump*, No.

25-CV-39-JJM-PAS, 2025 WL 715621, at *13 (D.R.I. Mar. 6, 2025). Here, that harm is substantial and irreparable.

As mentioned, Erie County's RSVP has been a cornerstone of community support for decades, providing essential volunteer services to vulnerable seniors throughout the county. (Hoak Delc. ¶¶ 4–9.) The program currently operates over 50 active volunteer stations, with approximately 450 senior volunteers contributing more than 37,000 hours of service per year to deliver meals, conduct wellness checks, assist with tax preparation, and support disaster preparedness efforts. (Hoak Delc. ¶¶ 4–7.) The loss of RSVP funding would immediately jeopardize these services, leaving thousands of seniors without critical support. It is not possible to continue to provide the level of service to which the Department has committed without the grants at issue here.

As mentioned, the Department of Senior Services relies heavily on federal grants, with approximately one-third of its budget coming from federal sources, primarily through the Older Americans Act. (Hoak Decl. ¶ 9.) Without RSVP funding, Erie County will be forced to either eliminate or drastically scale back its senior volunteer programs, causing direct and irreversible harm to the county's most vulnerable residents. (Hoak Decl. ¶¶ 20–21.) Those who rely on RSVP volunteers for companionship and wellness visits will face increased isolation and health risks, exacerbating existing issues such as food insecurity, social isolation, and mental health challenges. (Hoak Decl. ¶¶ 4–9; 20–21.)

This irreparable harm exists on both horns of the dilemma that the County faces without an injunction. If the County certifies compliance with an Americorps requirement that it not "promote diversity" that conflicts with existing Americorps regulations, that certification would be irreversible, and the County could face potential False Claims Act liability given its prior representations and the nature of the program. But if the County refuses to certify and loses funding, critical senior services would collapse. Either way, the damage cannot be undone, even if the Court later rules in Erie County's favor. This is quintessential irreparable harm. *See League of Women Voters of United States v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016) ("[O]bstacles [that] unquestionably make it more difficult for the [plaintiffs] to accomplish their primary mission" are irreparable harm); *New York*, 2025 WL 715621, at *13–*15 (highlighting as irreparable "harm resulting from the chaos and uncertainty that the Defendants' arbitrary decision to categorically freeze . . . federal funding"); *Aids Vaccine Advoc. Coal. v. United States Dep't of State*, No. 25-cv-400, 2025 WL 752378, at *19 (D.D.C. Mar. 10, 2025) (noting that the "blanket suspension of funds undermined [plaintiffs'] core missions and jeopardized vital services to vulnerable populations," which was irreparable harm); *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, No. 25-cv-239, 2025 WL 597959, at *18 (D.D.C. Feb. 25, 2025) (irreparable harm from funding freeze because, "[i]f the freeze were to remain in effect or recur, Plaintiffs' members will suffer 'existential injuries' and some programs may 'simply disappear.'" (cleaned up)).

C.    **The Balance of The Equities And Consideration of The Public Interest Tip in Erie County's Favor**

Finally, the balance of the equities (which merges with the public interest in this case, *Milligan*, 502 F. Supp. 3d at 321) tips in Erie County's favor. As explained above, Erie County will suffer irreparable harm if preliminary relief is not granted. And Americorps will have to do no more than follow its own rules, which it has been free to change since 1999. If Americorps genuinely wants to ensure compliance with federal anti-discrimination laws, and if it genuinely believes its rules require applicants to break them, it can repeal those rules. In the meantime, it will be required to do no more than what it has done for the past 26 years—four of which were during President Trump's last term—and require only those grant conditions articulated in its own rules. It will accordingly suffer no harm if enjoined during the pendency of this case.

## CONCLUSION

For the foregoing reasons, this Court should preliminarily enjoin Americorps from the challenged agency action.

Respectfully submitted,

*/s/ Charles Gerstein*
Charles Gerstein
Gerstein Harrow LLP
1001 G Street NW, Suite 400E
Washington, DC 20001
charlie@gerstein-harrow.com
(202) 670-4809

*/s/ Jason Harrow*
Jason Harrow

16

Gerstein Harrow LLP
12100 Wilshire Blvd., Suite 800
Los Angeles, CA 90025
jason@gerstein-harrow.com
(323) 744-5293