UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ERIE COUNTY NEW YORK, | |
| Plaintiff, | |
| v. | Civil Action No. 25-0783 (JEB) |
| CORPORATION FOR NATIONAL AND COMMUNITY SERVICE, et al., | |
| Defendants. | |

**DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

Table of Contents .......................................................................................................... ii

Table of Authorities ..................................................................................................... iii

Background ..................................................................................................................... 1

    I.     Erie County's Grant ............................................................................................. 1

    II.    Erie County's Complaint and Motion for Preliminary Injunction ......................... 5

Standard of Review ......................................................................................................... 6

    I.     Preliminary Injunctive Relief ............................................................................... 6

    II.    Administrative Procedure Act ................................................................................ 7

Argument ........................................................................................................................ 8

    I.     Plaintiff Will Not Suffer Imminent Irreparable Harm In The Absence Of Injunctive Relief ................................................................................................... 8

    II.    The Court Lacks Jurisdiction Over Plaintiff's Claims ......................................... 11

        A.     There Is No Waiver of Sovereign Immunity For Plaintiff's Claims ........ 11

        B.     Plaintiff's Claim is Not Ripe .................................................................. 17

    III.   Plaintiff's Motion Does Not Demonstrate That It Will Succeed on the Merits.... 18

    IV.   The Public Interest and the Equities Strongly Favor Defendants ......................... 20

    V.    Plaintiff Should Be Ordered to Post Security In Connection With Any Temporary Injunctive Relief ................................................................................................... 21

Conclusion ................................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Abdullah v. Obama*,
  753 F.3d 193 (D.C. Cir. 2014) ............................................................ 8

*Am. Petrol. Inst. v. EPA*,
  683 F.3d 382 (D.C. Cir. 2012) .......................................................... 17

*Am. Sci. & Eng'g, Inc. v. Califano*,
  571 F.2d 58 (1st Cir. 1978) .............................................................. 15

*Animal Legal Def. Fund v. Perdue*,
  872 F.3d 602 (D.C. Cir. 2017) ............................................................ 8

*Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
  745 F.2d 677 (D.C. Cir. 1984) ............................................................ 8

*AT&T Corp. v. FCC*,
  220 F.3d 607 (D.C. Cir. 2000) ............................................................ 7

*Butler v. Barnhart*,
  353 F.3d 992 (D.C. Cir. 2004) ............................................................ 8

*Chaplaincy of Full Gospel Churches v. England*,
  454 F.3d 290 (D.C. Cir. 2006) .............................................. 6, 9, 10, 11

*Chi. & Grand Trunk R. Co. v. Wellman*,
  143 U.S. 339 (1892) ........................................................................ 17

*CityFed Fin. Corp. v. Off. of Thrift Supervision*,
  58 F.3d 738 (D.C. Cir. 1995) ............................................................. 9

*Coggeshall Dev. Corp. v. Diamond*,
  884 F.2d 1 (1st Cir. 1989) ................................................................ 16

*Cohen v. Postal Holdings, LLC*,
  873 F.3d 394 (2d Cir. 2017) ............................................................. 15

*Colo. Wild Horse v. Jewell*,
  130 F. Supp. 3d 205 (D.D.C. 2015) ................................................... 20

*Columbus Reg'l Hosp. v. United States*,
  990 F.3d 1330 (Fed. Cir. 2021) ........................................................ 15

*D.C. Circuit." Fisheries Survival Fund v. Jewell*,
  236 F. Supp. 3d 332 (D.D.C. 2017) ..................................................... 9

*Damus v. Nielsen*,
  Civ. A. No. 18-0578 (JEB), 2018 WL 3232515 (D.D.C. July 2, 2018) .................. 6

*Davis v. Pension Benefit Guar. Corp.*,
   571 F.3d 1288 (D.C. Cir. 2009) ................................................................. 6

*Doe v. Mattis*,
   889 F.3d 745 (D.C. Cir. 2018) ................................................................... 9

*DSE, Inc. v. United States*,
   169 F.3d 21 (D.C. Cir. 1999) ................................................................... 22

*F.R. 14133-01*
   1999 WL 155145 (March 24, 1999) ........................................................... 5

*Finca Santa Elena, Inc. v. Army Corps of Eng'rs*,
   873 F. Supp. 2d 363 (D.D.C. 2012) ........................................................ 17

*Hi-Tech Pharmacal Co. v. FDA*,
   587 F. Supp. 2d 13 (D.D.C. 2008) ............................................................ 7

*Hubbard v. United States*,
   496 F. Supp.2d 194 (D.D.C. 2007) ......................................................... 21

*James v. Caldera*,
   159 F.3d 573 (Fed. Cir. 1998) ................................................................ 15

*League of Women Voters v. Newby*,
   838 F.3d 1 (D.C. Cir. 2016) ...................................................................... 6

*Lincoln v. Vigil*,
   508 U.S. 182 (1993) ............................................................................... 13

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................................... 17

*Megapulse, Inc. v. Lewis*,
   672 F.2d 959 (D.C. Cir. 1982) ................................................................ 15

*Michigan v. EPA*,
   576 U.S. 743 (2015) ................................................................................. 7

*Motor Vehicle Mfgr's Ass'n v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) .................................................................................. 7

*Nat'l Parks Conservation Ass'n v. U.S. Forest Serv.*,
   Civ. A. No. 15-1582 (APM), 2016 WL 420470 (D.D.C. Jan. 22, 2016) ................ 9

*Nat'l Treasury Emps. Union v. United States*,
   101 F.3d 1423–28 (D.C. Cir. 1996) ......................................................... 17

*Nken v. Holder*,
   556 U.S. 418 (2009) ............................................................................... 20

*Pursuing Am.'s Greatness v. Fed. Election Comm'n,*
    831 F.3d 500 (D.C. Cir. 2016) ................................................................. 20

*Randall v. United States,*
    95 F.3d 339 (4th Cir. 1996) ................................................................. 15

*Sampson v. Murray,*
    415 U.S. 61 (1974) ................................................................. 20

*San Juan City Coll. v. United States,*
    391 F.3d 1357 (Fed. Cir. 2004) ................................................................. 15

*Serono Labs., Inc. v. Shalala,*
    158 F.3d 1313 (D.C. Cir. 1998) ................................................................. 21

*Sherley v. Sebelius,*
    644 F.3d 388 (D.C. Cir. 2011) ................................................................. 7

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.,*
    549 U.S. 422 (2007) ................................................................. 12

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) ................................................................. 12

*Stoddard v. Wynn,*
    68 F. Supp. 3d 104 (D.D.C. 2014) ................................................................. 12

*Texas v. United States,*
    523 U.S. 296 (1998) ................................................................. 17, 18, 19

*Thermalon Indus., Ltd. v. United States,*
    34 Fed. Cl. 411 (1995) ................................................................. 14-15

*Trump v. New York,*
    141 S. Ct. 530 (2020) ................................................................. 17

*U.S. Conf. of Catholic Bishops v. U.S. Dep't of State,*
    Civ. A. No. 25-0465, 2025 WL 763738 (D.D.C. Mar. 11, 2025) ................................ 15, 16

*United Aeronautical Corp. v. United States Air Force,*
    80 F.4th 1017 (9th Cir. 2023) ................................................................. 15

*United States v. Mitchell,*
    463 U.S. 206 (1983) ................................................................. 12

*Weinberger v. Romero-Barcelo,*
    456 U.S. 305 (1982) ................................................................. 21

*Winter v. Nat. Res. Def. Council,*
    555 U.S. 7 (2008) ................................................................. 6, 9, 21

*Wis. Gas Co. v. FERC*,
  758 F.2d 669 (D.C. Cir. 1985) (per curiam) ................................................................ 8, 9, 10

*Wyo. Outdoor Council v. U.S. Forest Serv.*,
  165 F.3d 43 (D.C. Cir. 1999) ................................................................................ 17

**Statutes, Regulations, and Other Legal Provisions**

U.S. Const., Art. I, Sec. 8, cl. 1 ................................................................................ 5

5 U.S.C. § 701 ................................................................................................ 13

5 U.S.C. § 702 ................................................................................................ 12

5 U.S.C. § 706 ................................................................................................ 7

28 U.S.C. § 1346 ............................................................................................ 14

28 U.S.C. § 1491 ............................................................................................ 14

42 U.S.C. § 5022 ............................................................................................ 14

42 U.S.C. § 12571 .......................................................................................... 14

42 U.S.C. § 5001 ........................................................................................ 14, 21

45 C.F.R. § 2553.24 .................................................................................. 11, 19, 20

Defendants Corporation for National and Community Service ("AmeriCorps") and Jennifer Bastress Tahmasebi, in her official capacity as head of AmeriCorps (collectively, "Defendants"), by and through undersigned counsel, respectfully oppose the motion for preliminary injunction filed by Plaintiff Erie County, New York ("Erie County ") ("Plaintiff's Motion").[1]   As explained below, Plaintiff has not demonstrated that it is at imminent risk of irreparable harm, that it is likely to succeed on the merits, or that the balance of the equities is in its favor.  As a result, its request for a preliminary injunction should be denied.

## BACKGROUND[2]

## I.   Erie County's Grant

In October 2023, Plaintiff applied for a three-year grant from AmeriCorps for a total award of approximately $250,000. Compl. (ECF No. 1) ¶¶ 1, 20.  The purpose of the grant—called an "RSVP" grant, or Retired and Senior Volunteer Program—is to support older people in the Buffalo area of New York.  *Id.* ¶ 1.  The grant application explained that "Focused initiatives are underway directing a portion of our recruitment efforts to some of the more culturally diverse areas of our region. This effort should allow us to expand our base of volunteer membership to better reflect the diversity of Erie County." *Id.* ¶ 21.  Erie County further explained that

> Being inclusive in our programs, events, recruitment and assignments will always remain intentional, transparent and accountable. No individual wishing to volunteer or participate in our program will be left behind. We will be diligent in our search for any future funding opportunities that would enable us to increase recruitment and retention with this diversity-focused expansion effort [and that] To increase our DEIA work, we are actively working to recruit a diverse group to our Advisory Council to include more BIPOC [Black, Indigenous, and People of Color] members.

---

[1]     Defendants also respectfully submit herewith the Declaration of Carly Bruder ("Bruder Decl.") in support of their Opposition.

[2]     The following alleged facts are accepted as true solely for the purposes of this motion.

*Id.* ¶ 22.   In January 2024, AmeriCorps awarded Erie County the grant it sought. Erie County received the funds for its first year of operations shortly after the grant was approved.  *Id.* ¶ 23; Bruder Decl. ¶ 3.   Erie County's initial grant year ended on March 31, 2025. Bruder Decl. ¶ 3. Erie County submitted a continuation application under the funding notice for Fiscal Year 2025, seeking a proposed grant amount of $81,391.00, to support 450 unduplicated volunteers.  *Id.*

Upon submission of each of these grant applications in the electronic grants system (eGrants), the duly authorized representative of the Erie County certified that it would comply with 2024-2025 Assurances and Certifications including an assurance that the applicant "will comply with all applicable requirements of all other Federal laws, executive orders, regulations, application guidelines, and policies governing this program."  Bruder Decl. ¶ 4.   The Notice of Grant Award for the grant states that "Recipient also agrees to comply with assurances and certifications made in the grant application, supporting documents, and with applicable federal statutes, regulations and guidelines." *Id.*   The fiscal year 2024 General Grant and Cooperative Agreement Terms and Conditions state that the recipient must comply with executive orders.  *Id.*

On January 20, 2025, President Trump signed an executive order directing government officials to eliminate "DEI," "DEIA," and "environmental justice" from the federal government, including by shuttering all "DEI," "DEIA," and "environmental justice" offices, positions, and functions.  Compl. (ECF No. 1) ¶ 15 (citing EO 14151 § 2(b)(i)).  Order 14151 also directed "each agency, department, or commission head, in consultation with the Attorney General, the Director of OMB, and the Director of OPM . . . [to] terminate, to the maximum extent allowed by law, all . . . 'equity related' grants or contracts" within 60 days. *Id.* Also within 60 days, agencies must provide the OMB Director with lists of federal contractors who have provided DEIA training to

the government and federal grantees who received funding "to provide or advance DEI, DEIA, or 'environmental justice' programs, services, or activities." *Id.* (citing EO 14151 § 2(b)(ii)).   On January 21, 2025, the President signed Executive Order 14173, titled "Ending Illegal Discrimination and Restoring Merit-Based Opportunity." Compl. (ECF No. 1) ¶ 16. Executive Order 14173 states that: "The head of each agency shall include in every contract or grant award . . . [a] term requiring such counterparty or recipient to certify that it does not operate any programs promoting DEI that violate any applicable Federal anti-discrimination laws." *Id.*

On February 14, 2025, AmeriCorps sent Erie County a letter explaining that "AmeriCorps is continuing to review all applicable executive orders, memoranda, and corresponding guidance issued since January 20, 2025, by President Trump . . . . AmeriCorps is taking proactive action to ensure alignment with these directives and the Trump-Vance administration priorities."   Compl. (ECF No. 1) ¶ 24.   "Based on this review," the letter continued, "the language below from your application requires clarification: . . . . The other narrative includes the following terms: DEI. The strengthening communities narrative includes the following terms: Diversity, Equity; DEI."  *Id.* ¶ 25.  The letter gave Erie County three options: It could "reply all to this letter by email by February 19, 2025" and "copy and paste this statement . . . 'I certify that RSVP of Erie County . . . complies with all administration Executive Orders and does not include any activities that promote DEI activities.'" *Id.* ¶ 26.  It could "initiate an amendment to [its] most recent award . . . and remove or update any language related to out of compliance activities." *Id.*  Or it could "relinquish the award." *Id.*  In a subsequent guidance document, AmeriCorps explained that grantees "must comply with all executive orders" including EO 14151 and EO 14173. Compl. (ECF No. 1) ¶ 27.  This document explained that "nonresponse may result in the termination of your awards."  *Id.*

On February 20, 2025, Erie County responded to AmeriCorps, writing:

> Erie County proudly supports the AmeriCorps Retired Senior Volunteer Program (RSVP) grant. RSVP staff are performing duties in line with AmeriCorps guidelines. Our 450 volunteers have provided 37,000 hours of service to our community through partnership with 60 local organizations. The impact to our community and the wellbeing of our volunteers is overwhelmingly positive. Our administrative responsibilities continue to be informed by AmeriCorps guidance. This includes any new volunteer orientation. Our selection and requirement of advisory board members will ensure well rounded representation of the community we serve. We look forward to a robust partnership moving forward.

Compl. (ECF No. 1) ¶ 29.  The same day, in response, AmeriCorps' regional portfolio manager wrote that "it is unclear if you have provided the statement below as a self-certification confirming that your AmeriCorps RSVP program is deemed in compliance with the Executive Orders . . . . At this time, only the self-certification statement as originally provided is being accepted." *Id.* ¶ 30.

On February 24, 2025, Erie County's attorney emailed a copy of a temporary injunction against enforcement of Executive Order 14151 issued by the United States District Court for the District of Maryland. Erie County's attorney asked that AmeriCorps "please confirm that you will take no further action against Erie County . . . unless and until this Order is lifted." *Id.* ¶ 31.  In response, AmeriCorps said that "in accordance with the preliminary injunction, [it] will not take any action related to award terminations in relation to this review," but asked that Erie County "please continue with your review of your award, including submitting the self-certification or amendment, as applicable." *Id.* ¶ 32.  On March 11, 2025, AmeriCorps wrote to Erie County:

> Thank you for your response to the executive order compliance review process. AmeriCorps is aware of the preliminary injunction related to the two DEI-related executive orders. In accordance with the preliminary injunction, no additional action is needed at this time and you may continue with grant activities. Upon the resolution of the preliminary injunction AmeriCorps will follow up with additional instructions.

*Id.* ¶ 33.  On March 12, 2025, AmeriCorps emailed Erie County to explain that further action was required to approve Erie County's continuation of its grant. *Id.* ¶ 34.  In response, Erie County

asked if the March 12 email had issued in error. *Id.* ¶ 35.  AmeriCorps responded that "The emails dated 3/12/2025 reference Executive Order Compliance Action Required and resolutions regarding your organization's proposed FY25 RSVP *Continuation* application. These review and resolution actions must be addressed in order to continue processing this application, and are separate from the Executive Order review on your FY24 award." *Id.* ¶ 36.

## II.    Erie County's Complaint and Motion for Preliminary Injunction

On March 17, 2025, Erie County filed its complaint in this litigation.  Compl. (ECF No. 1).  Plaintiff alleges that AmeriCorps' certification requirement violates the Administrative Procedures Act because it is arbitrary and capricious, and that it violates the Spending Clause of Constitution because it "impose[s] imprecise and unauthorized restrictions on federal funding to a local government." *Id.* ¶ 4.  Specifically, in Count One, Erie County claims that AmeriCorps' certification requirement violates a 1999 regulation requiring (among other things) that each grantee "shall secure community participation in local project operation by establishing an Advisory Council . . . [o]f a diverse composition that reflects the demographics of the service area." Compl. (ECF No. 1) ¶ 14 (citing 64 F.R. 14133-01, 1999 WL 155145 (March 24, 1999), *amending* 45 C.F.R. § 2553.24); *id.* ¶ 43.  Count One also alleges that "AmeriCorps' action is not supported by reasoning and was not subject to any notice-and-comment procedure." *Id.* ¶ 42.  In Count Two, Plaintiff alleges that AmeriCorps' certification requirement violates the Spending Clause of the Constitution (U.S. Const., Art. I, Sec. 8, cl. 1) because it "conditions federal funding on compliance with a fatally vague condition: whether a grant 'promotes DEI,' without defining what that is." Compl. (ECF No. 1) ¶ 47.

In its Prayer for Relief, Plaintiff requests:  (1) "That this Court enjoin and set aside [AmeriCorps'] imposition of grant requirements beyond those authorized by its own rules;" (2) "That this Court enjoin Defendants . . . from imposing grant requirements limiting the promotion

of 'DEI' and related terms as explained in Executive Orders 14151 and 14173;" and (3) "All other

relief that this Court deems just and proper."  Compl. (ECF No. 1) at 13.

On March 21, 2025, Erie County filed a motion for preliminary injunction, seeking an order

compelling

> Defendants to determine Plaintiff is in compliance with all relevant grant
> requirements for existing RSVP grants, and to disburse immediately any funds to
> which it is entitled, without Plaintiff needing to certify that "RSVP of Erie County,
> 24SR260017 complies with all administration Executive Orders and does not
> include any activities that promote DEI activities," or make any other substantially
> similar certification referencing compliance with executive orders and promotion
> of DEI activities.

Mot. Prelim. Inj. (ECF No. 5) at 1.

## STANDARD OF REVIEW

### I.  <u>Preliminary Injunctive Relief</u>

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*

*v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008). A party seeking preliminary relief must make a

"clear showing that four factors, taken together, warrant relief: likely success on the merits, likely

irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and

accord with the public interest." *League of Women Voters v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016).

The movant bears the burden of persuasion to show that the requested relief is due. *Chaplaincy of*

*Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

Before the Supreme Court's decision in *Winter*, courts weighed these factors on a "sliding

scale," allowing "an unusually strong showing on one of the factors" to overcome a weaker

showing on another. *Damus v. Nielsen*, Civ. A. No. 18-0578 (JEB), 2018 WL 3232515, at *4

(D.D.C. July 2, 2018) (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291-92

(D.C. Cir. 2009)). This Circuit has hinted, though not held, that *Winter*—which overturned the

Ninth Circuit's "possibility of irreparable harm" standard—establishes that "likelihood of

irreparable harm" and "likelihood of success" are "independent, free-standing requirement[s]." *Sherley v. Sebelius*, 644 F.3d 388, 392-93 (D.C. Cir. 2011); *see also League of Women Voters*, 838 F.3d at 7 (declining to address whether "sliding scale" approach is valid after *Winter*).

## II.    Administrative Procedure Act

The Administrative Procedure Act ("APA") directs courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, [] otherwise not in accordance with law," or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E).  The scope of review is "narrow," and "the court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfgr's Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  The arbitrary and capricious standard is "[h]ighly deferential," and "presumes the validity of agency decisions." *AT&T Corp. v. FCC*, 220 F.3d 607, 616 (D.C. Cir. 2000); *see also Hi-Tech Pharmacal Co. v. FDA*, 587 F. Supp. 2d 13, 18 (D.D.C. 2008) ("[I]t is not enough for the agency decision to be incorrect— as long as the agency decision has some rational basis, the court is bound to uphold it.").  Deference is especially appropriate in areas that are "complex and highly technical." *AT&T*, 220 F.3d at 616.

Agency action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision that runs counter to the evidence before the agency." *State Farm*, 463 U.S. at 43.  The Court must ensure that "the process by which [the agency] reache[d] [its] result [was] logical and rational." *Michigan v. EPA*, 576 U.S. 743, 750 (2015). In doing so, however, the Court must "not . . . substitute its [own] judgment for that of the agency." *State Farm*, 463 U.S. at 43. Rather, "[t]he [C]ourt will ordinarily uphold an agency's decision so long as the agency 'examined the relevant data and articulated a satisfactory explanation for its action, including a rational connection between the facts found and the choice

made.'" *Animal Legal Def. Fund v. Perdue*, 872 F.3d 602, 611 (D.C. Cir. 2017) (alterations omitted) (quoting *State Farm*, 463 U.S. at 43).

Similarly, an agency decision is supported by substantial record evidence if it finds support in "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004). The substantial evidence test requires "more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *Id.* (internal quotation marks omitted). As the D.C. Circuit explained, "[w]hen the arbitrary or capricious standard is performing th[e] function of assuring factual support, there is no substantive difference between what it requires and what would be required by the substantial evidence test." *Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 745 F.2d 677, 683–84 (D.C. Cir. 1984).

## ARGUMENT

Plaintiff's motion for injunctive relief should be denied. Plaintiff has not demonstrated that it risks imminent irreparable harm or that it is likely to succeed on the merits of its claim. Moreover, the balance of interests, which considered the broader public interest in making the determinations that Plaintiff seeks to challenge, is firmly in favor of Defendants.

## I.   Plaintiff Will Not Suffer Imminent Irreparable Harm In The Absence Of Injunctive Relief

Movants for a preliminary injunction must show that they are "likely to suffer irreparable harm in the absence of preliminary relief." *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014); *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam) ("The basis for injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies") (cleaned up). A preliminary injunction may not issue "based only on a possibility of

irreparable harm . . . [since] injunctive relief [i]s an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

The "standard for irreparable harm is particularly high in the D.C. Circuit." *Fisheries Survival Fund v. Jewell*, 236 F. Supp. 3d 332, 336 (D.D.C. 2017). If a party makes no irreparable injury showing, a court may deny a motion for injunctive relief without considering the other factors. *CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995); *Wis. Gas*, 758 F.2d at 674, 676 (because movants could not establish irreparable harm, the court need not address any of the other factors). The injury "must be both certain and great; it must be actual and not theoretical [and] . . . of such imminence that there is a 'clear and present' need for equitable relief." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (citation omitted); *Doe v. Mattis*, 889 F.3d 745, 782 (D.C. Cir. 2018) (injury must be "certain," "great" and "actual").

A movant must substantiate that the irreparable injury is "likely" to occur in the absence of relief. *See, e.g.*, *Nat'l Parks Conservation Ass'n v. U.S. Forest Serv.*, Civ. A. No. 15-1582 (APM), 2016 WL 420470, at *8 (D.D.C. Jan. 22, 2016) ("The movant bears the burden of substantiating, with evidence, that the injury is certain, imminent, great, and beyond remediation"). The Local Civil Rules underscore the need for the movant to present such proof, requiring that "[a]n application for a preliminary injunction . . . be supported by all affidavits on which the plaintiff intends to rely" and prohibiting the filing of "[s]upplemental affidavits" without "permission of the Court." *See id.* (citing LCvR 65.1(c)). "Bare allegations of what is likely to occur are of no value" because the district court must make the determination of "whether the harm will *in fact* occur." *Wis. Gas*, 758 F.2d at 674 (emphasis in original).

Here, Plaintiff claims that irreparable harm exists regardless of the choice it makes on how to respond to AmeriCorps' certification request. Specifically, Plaintiff claims that, on the one

hand, "[i]f [Erie] County certifies compliance with an AmeriCorps requirement that it not 'promote diversity' that conflicts with existing AmeriCorps regulations, that certification would be irreversible, and the County could face potential False Claims Act liability given its prior representations and the nature of the program."  Mot. Prelim. Inj. (ECF No. 5) at 15.  On the other hand, Plaintiff argues that "if [Erie] County refuses to certify and loses funding, critical senior services would collapse."  *Id.*   Either way, Plaintiff argues, "the damage cannot be undone, even if the Court later rules in Erie County's favor."  *Id.*   But Plaintiff's argument both creates a false choice and is speculative.

As a threshold matter, to date, AmeriCorps has neither cancelled Erie County's grant, nor has it otherwise withheld funds from Plaintiff.  *See generally*, Compl. (ECF No. 1); Bruder Decl. ¶ 9(e).  Plaintiff speculates that AmeriCorps will withhold grant funds in some manner if Plaintiff does not certify compliance with Executive Orders 14151 and 14173, but AmeriCorps has not specifically stated that it would withhold funds, just that a consequence of non-compliance "may" be termination of awards.  *See* Letter (ECF No. 5-5) at 2 ("If we do not receive your response by February 19, 2025**,** adverse action up to and including termination of awards may begin").  Moreover, AmeriCorps regulations provide that grantees are entitled to an administrative hearing before termination of their grant.  Bruder Decl. ¶ 9(e).

In this Circuit, any alleged irreparable injury supporting preliminary equitable relief "must be both certain and great; it must be actual and not theoretical."  *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297.  It also must be of such "*imminence* that there is a clear and present need for equitable relief."  *Id*. (citing *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)) (emphasis in original).  The vague allegations about *possible* future harms contained in Plaintiff's Complaint fall far short of showing the D.C. Circuit requires of an applicant for a

- 10 -

temporary restraining order. *See*, *e.g.*, *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (noting the Circuit's "high standard for irreparable injury").

In addition, as discussed in more detail below, Plaintiff's assertion that certification of compliance with Executive Orders 14151 and 14173 "conflicts with existing AmeriCorps regulations" asks 45 C.F.R. § 2553.24(a)(5) to do too much work. The vast majority of the diversity-related language from Erie County's grant application that Plaintiff identified as potentially conflicting with Executive Orders 14151 and 14173 (*see* Compl. (ECF No. 1) ¶¶ 21-22) has nothing to do with the composition of its program's Advisory Council, i.e. the issue addressed by 45 C.F.R. § 2553.24(a)(5). Plaintiff does not otherwise explain how "existing AmeriCorps regulations" require aspects of its program that would conflict with and prevent certification of compliance with Executive Orders 14151 and 14173.

Plaintiff also conveniently overlooks the fact that AmeriCorps provided a third option: request amendment to its grant in order to bring it into compliance with Executive Orders 14151 and 14173. As explained in the agency's declaration, numerous grantees around the country have taken this option. Bruder Decl. ¶ 9. There is no evidence that Plaintiff has even considered trying to request amendment to its grant so that it can comply with Executive Orders 14151 and 14173. Plaintiff cannot demonstrate that AmeriCorps actions put it in imminent threat of irreparable harm where it has not even attempted to avail itself of an option that would allow its grant to come into compliance with Executive Orders 14151 and 14173 and permit certification.

Having failed to demonstrate that they will be subject to an imminent threat of irreparable harm without injunctive relief, Plaintiff has failed to meet its burden of establishing that it is entitled to a preliminary injunction.

## II.    The Court Lacks Jurisdiction Over Plaintiff's Claims

### A.    There Is No Waiver of Sovereign Immunity For Plaintiff's Claims

Before a court may rule on the merits of a claim, it must first determine if "it has the jurisdiction over the category of claim in suit (subject [] matter jurisdiction)." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-102 (1998)). The burden of proving subject matter jurisdiction rests with the plaintiff, and the requirement that a plaintiff establish subject matter jurisdiction "as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Steel Co.*, 523 U.S. at 95 (internal quotation marks omitted).

AmeriCorps issues discretionary grants of federal funds and is authorized to impose (and enforce) terms and conditions on the use of its federal funds. As a threshold matter, this Court should not proceed to determine purported merits arguments because it does not have jurisdiction to review AmeriCorps' discretionary grant funding and management decisions. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). "The doctrine of sovereign immunity provides that the Federal Government can be sued only insofar as it has agreed to be sued." *Stoddard v. Wynn*, 68 F. Supp. 3d 104, 112 (D.D.C. 2014) (citing *FDIC v. Meyer,* 510 U.S. 471, 475 (1994)). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC*, 510 U.S. at 475. "Sovereign immunity also bars suit for money damages against federal officials in their official capacities absent a specific waiver by the Federal Government." *Stoddard*, 68 F. Supp. 3d at 112 (citing *Clark v. Library of Cong.*, 750 F.2d 89, 102–04 (D.C. Cir. 1984)). Here, Plaintiffs assert the Administrative Procedure Act, which provides a limited waiver of sovereign immunity for claims "seeking relief other than money damages." 5 U.S.C. § 702. That limited waiver does not, however, extend to this action for two reasons.

First, the Court lacks jurisdiction to review AmeriCorps' discretionary grantmaking decisions. The APA does not permit judicial review of "agency action" that "is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The Court therefore lacks jurisdiction because decisions about the substance of AmeriCorps' challenged certification request—which concerns the administration of grants and enforcement of conditions on the use of grant funds to bring AmeriCorps' grants into compliance with executive orders—are firmly committed to the agency's discretion. In *Lincoln v. Vigil*, 508 U.S. 182 (1993), the Supreme Court held that the Indian Health Service's decision to discontinue a program it had previously funded and to instead reallocate those funds to other programs was committed to agency discretion by law and thus not reviewable under the APA's reasoned-decisionmaking standards. *See id.* at 185-88. The Court explained that the "allocation of funds from a lump-sum appropriation is" an "administrative decision traditionally regarded as committed to agency discretion," because the "very point of a lump-sum appropriation is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." *Id.* at 192.

Indeed, "an agency's allocation of funds from a lump-sum appropriation requires 'a complicated balancing of a number of factors which are peculiarly within its expertise': whether its 'resources are best spent' on one program or another; whether it 'is likely to succeed' in fulfilling its statutory mandate; whether a particular program 'best fits the agency's overall policies'; and, 'indeed, whether the agency has enough resources' to fund a program 'at all.'" *Id.* at 193. "Congress may always circumscribe agency discretion to allocate resources by putting restrictions in the operative statutes." *Id.* But as long as the agency abides by the relevant statutes (and whatever self-imposed obligations may arise from regulations or grant instruments), the APA "gives the courts no leave to intrude." *Id.*

AmeriCorps exercises discretion over the grant programs at issue here in determining how to allocate and administer appropriated funds across applicants. The statutes governing the RSVP Program provide that AmeriCorps "is authorized to make grants" in accordance with regulations prescribed by AmeriCorps for these programs. *See* 42 U.S.C. §§ 5001(a), 5011(a), 5013(a); *see also id.* § 5022 (permitting that payments for each of these grants "may be made . . . on such conditions" as AmeriCorps determines). The statute governing the AmeriCorps State and National program similarly provides that AmeriCorps "may make grants" to states and subdivisions of states "subject to the availability of appropriations" in furtherance of national service programs. 42 U.S.C. § 12571(a). These statutes confer AmeriCorps discretion to determine how best to allocate the funding for each program. AmeriCorps' grantmaking decisions are discretionary decisions regarding how to allocate and administer funds, not subject to arbitrary-and-capricious review under the APA.

Second, this Court lacks jurisdiction because this case implicates the parties' rights under a contract, where Plaintiffs' claims exceed $10,000, and exclusive jurisdiction lies with the Court of Federal Claims. When a party seeks to secure funding that it believes the government is obligated to pay under a contract or grant, the proper remedy is typically suit under the Tucker Act, not the APA. The Tucker Act provides that the "United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded" on "any express or implied contract with the United States." 28 U.S.C. § 1491(a). This jurisdiction is only concurrent with district courts for civil actions not exceeding $10,000 in amount. 28 U.S.C. § 1346(a)(2). Grants such as Plaintiff's are considered contracts under the Tucker Act. *See Thermalon Indus., Ltd. v. United States*, 34 Fed. Cl. 411, 420-21 (1995) (holding that where the government uses "a bilateral agreement that satisfies the traditional requirements for a contract,

then that arrangement would fall within the scope of this court's Tucker Act jurisdiction"); *see also Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1338 (Fed. Cir. 2021); *San Juan City Coll. v. United States*, 391 F.3d 1357, 1360-62 (Fed. Cir. 2004) (treating a "Program Participation Agreement" and related grants under the Higher Education Act as a contract).

In determining whether "a particular action" is "at its essence a contract action" subject to the Tucker Act or instead a challenge properly brought under the APA, courts have looked at both "the source of the rights upon which the plaintiff bases its claims" and "the type of relief sought (or appropriate)." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982); *see also Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 403 (2d Cir. 2017) (applying *Megapulse* test); *Am. Sci. & Eng'g, Inc. v. Califano*, 571 F.2d 58, 63 (1st Cir. 1978) ; *Randall v. United States*, 95 F.3d 339, 347 (4th Cir. 1996) ; *James v. Caldera*, 159 F.3d 573, 579 (Fed. Cir. 1998) ("Our inquiry, however, does not end with the words of the complaint, however instructive they may be, for we still must look to the true nature of the action in determining the existence or not of jurisdiction.") (internal quotation marks omitted); *cf. United Aeronautical Corp. v. United States Air Force*, 80 F.4th 1017, 1025-26 (9th Cir. 2023) (interpreting "the Tucker Act to 'impliedly forbid' an APA action seeking injunctive and declaratory relief" when it is a "'disguised' breach-of-contract claim"). Conducting such an analysis, another district court recently denied a request for a preliminary injunction seeking to prevent the government from pausing or cancelling funding under the Refugee Assistance Program on the ground that the motion "at its core, seek[s] a purely contractual remedy." *U.S. Conf. of Catholic Bishops v. U.S. Dep't of State*, Civ. A. No. 25-0465, 2025 WL 763738, at *1 (D.D.C. Mar. 11, 2025), *appeal filed*, No. 25-5066 (D.C. Cir.). The court explained that "the Tucker Act instructs that all contract disputes with the Government must be resolved by

the Court of Federal Claims." *Id.* It thus held that the plaintiff was "unlikely to prevail on the merits because this Court lacks the authority to grant the relief it seeks." *Id.* at *4.

Likewise, here, the source of the rights that—if vindicated—could conceivably result in the relief from AmeriCorps' compliance instructions that Plaintiff seeks, is the grant agreement. Plaintiff's claims and rights flow from the terms and conditions of their grants. Plaintiff's lawsuit is essentially a contract dispute—*i.e.*, whether AmeriCorps unlawfully imposed *new* grant conditions, as Plaintiff claims, or whether AmeriCorps merely took steps to bring its grantees into compliance with the conditions of their grants. Although Plaintiff also invokes the APA, its APA theory is simply that AmeriCorps' "new" grant terms were unlawful. If that were sufficient to circumvent the Tucker Act, every breach-of-contract plaintiff could do so. *See U.S. Conf. of Catholic Bishops*, 2025 WL 763738, at *5 ("[C]ourts are to be wary of plaintiffs artfully pleading their way around the jurisdictional strictures of the Tucker Act.").

At bottom, the grant itself gives rise to any obligation to fund Plaintiff's program. And Plaintiff's claim that the grants were improperly subjected to "new" conditions boils down to an argument that the government violated the terms of the grant. Plaintiff ultimately seeks prohibition against AmeriCorps's ability to condition or withhold money under the terms of Plaintiff's grant. However, "[f]ederal courts do not have the power to order specific performance by the United States of its alleged contractual obligations." *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 3 (1st Cir. 1989); *see also U.S. Conf. of Catholic Bishops*, 2025 WL 763738, at *5 (explaining that a "request for an order that the government 'must perform' on its contract is one that must be resolved by the Claims Court"). As the First Circuit has explained, the APA's waiver of sovereign immunity for claims seeking relief other than money damages does not extend to "specific performance for breach of contract." *Coggeshall Dev. Corp.*, 884 F.2d at 3. Thus, regardless of

whether Plaintiff seeks to compel Defendants to pay money allegedly owed under the grants or seek to prohibit Defendants from taking actions Plaintiff believes contravene the terms of the grants, this Court lacks jurisdiction.

### B.    Plaintiff's Claim is Not Ripe

Because Article III limits the constitutional role of the federal judiciary to resolving cases and controversies, *see, e.g., Chi. & Grand Trunk R. Co. v. Wellman*, 143 U.S. 339, 345 (1892), standing "is an essential and unchanging" predicate to any federal court's exercise of jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  The ripeness doctrine "generally deals with when a federal court can or should decide a case." *Am. Petrol. Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2012). Part of the ripeness doctrine is "subsumed into the Article III requirement of standing, which requires a petitioner to allege inter alia an injury-in-fact that is 'imminent' or 'certainly impending.'" *Id.* (citing *Nat'l Treasury Emps. Union v. United State*s, 101 F.3d 1423, 1427–28 (D.C. Cir. 1996)). For a claim to be ripe under Article III, the plaintiff "must establish constitutional minima akin to that of standing by showing an injury-in-fact; allegations of possible future injury do not satisfy this requirement." *Finca Santa Elena, Inc. v. Army Corps of Eng'rs*, 873 F. Supp. 2d 363, 368 (D.D.C. 2012) (citing *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 48 (D.C. Cir. 1999)). In other words, a case is not "constitutionally" ripe where it is "dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

Here, as discussed above, Plaintiff has not actually made a certification or failed to, nor has its grant been terminated or revoked.  Moreover, because Plaintiff has the option of seeking to amend its grant to bring it into compliance with the executive orders, it is not a foregone conclusion that it will be forced to choose between certifying compliance under its existing grant or

relinquishing its grant. Moreover, Plaintiff can seek administrative review of any action to terminate its grant. Finally, though Plaintiff must allege actual harm to itself in order to have standing, it has not even pointed to examples of other grantees having their awards terminated for failure to sign a certification.

Because Plaintiff's claim is not ripe, this Court lacks jurisdiction over its claims.

## III.   <u>Plaintiff's Motion Does Not Demonstrate That It Will Succeed on the Merits</u>

Plaintiff's Motion for Preliminary Injunction does not demonstrate that Plaintiff will succeed on the merits. Plaintiff's merits argument rests almost entirely upon its assertion that compliance with the certification requirement necessarily conflicts with AmeriCorps' regulations. Mot. Prelim. Inj. (ECF No. 5) at 10 ("Erie County is likely to succeed on the merits of this dispute for the straightforward reason that AmeriCorps' new grant requirements arbitrarily and capriciously forbid what AmeriCorps' own rules require"); *id.* at 11 ("AmeriCorps' challenged actions transparently violate their own rules."). But the facts Plaintiff supplies in support of that assertion do not demonstrate the existential conflict of which Plaintiff complains.

Plaintiff received a letter on February 14, 2025, regarding AmeriCorps' efforts to ensure compliance with executive orders signed by President Trump. Compl. (ECF No. 1) ¶ 24; Letter (ECF No. 5-5) at 1. The letter identified the terms "DEI," "Diversity," and "Equity" in Plaintiff's grant application as requiring clarification and asked Plaintiff to review its application for compliance with executive orders and take one of three enumerated actions. Letter (ECF No. 5-5) at 1. First, if Plaintiff assessed its award to be compliant with no revisions, it could complete a self-certification by stating that: "I certify that RSVP of Erie County, 24SR260017 complies with all administration Executive Orders and does not include any activities that promote DEI activities." *Id.* Second, if Plaintiff assessed its award to be "noncompliant within the scope of [its] approved grant activities, to maintain [its] AmeriCorps award" it was directed to stop affected

services, "[i]nitiate an amendment to [its] most recent award 24SR260017 and remove or update any language related to out of compliance activities," and submit the amendment by February 19, 2025. *Id.* at 2 (emphasis in original omitted). Finally, if Plaintiff assessed its award to be "noncompliant within the scope of [its] approved grant activities, and [it] no longer wish[ed] to remain an AmeriCorps grantee/sponsor, [it could] relinquish [its] award." *Id.* (emphasis in original omitted). Plaintiff complains that it could not take the first option—and presumably the second option—because Plaintiff believes that its award could not be both complaint with the executive orders and the AmeriCorps rule in 45 C.F.R. § 2553.24, which states in relevant part that "A sponsor shall secure community participation in local project operation by establishing an Advisory Council or a similar organizational structure with a membership that includes people . . . Of a diverse composition that reflects the demographics of the service area."  45 C.F.R. § 2553.24(a)(5); Mot. Prelim. Inj. (ECF No. 5) at 10-12.

As a threshold matter, of the language in Erie County's grant application that Plaintiff identified as potentially conflicting with Executive Orders 14151 and 14173, only one statement implicates the composition of its Advisory Council. Compl. (ECF No. 1) ¶ 22 ("To increase our DEIA work, we are actively working to recruit a diverse group to our Advisory Council to include more BIPOC [Black, Indigenous, and People of Color] members."). The other statements identified relate more broadly to Erie County's program's diversity and inclusion efforts, not to the Advisory Council itself. *See generally*, *id.* ¶¶ 21-22. Though Plaintiff suggests that the non-Advisory Council language was added to comply with AmeriCorps rules, the document to which it points is not actually a law or regulation, but the "Notice of Funding Opportunity" and its grant application guidance provided prior to January 20, 2025. Compl. (ECF No. 1) ¶13; Notice (ECF No. 5-11). Plaintiff does not argue that revising its grant application in ways that are inconsistent

with the "Notice of Funding Opportunity" would violate the law and expose it to liability under the False Claims Act. *See generally*, Compl. (ECF No. 1); Mot. Prelim. Inj. (ECF No. 5). Rather, Plaintiff relies on 45 C.F.R. § 2553.24(a)(5), which facially does not command anything other than that the grant recipient establish an Advisory Council "[o]f a diverse composition that reflects the demographics of the service area."

Plaintiff had an opportunity to revise its grant application to address the language unrelated to its Advisory Council, but Plaintiff has presented no evidence that it ever attempted to do so. In addition, Plaintiff has presented no evidence that it ever engaged with AmeriCorps on the issue of whether it could certify compliance with Executive Orders 14151 and 14173 while keeping its Section 2553.24(a)(5)-compliant Advisory Council. Instead, Plaintiff sent a vague communication to AmeriCorps stating, among other things, that "RSVP staff are performing duties in line with AmeriCorps guidelines," but not otherwise indicating whether it was seeking amendment of its award or certifying compliance with the executive orders. Compl. (ECF No. 1) ¶ 29.

Finally, Plaintiff's Motion for Preliminary Injunction essentially does not address the assertions in its complaint: (a) that AmeriCorps' action was not subject to any notice-and-comment procedure or (b) that AmeriCorps has violated the Spending Clause. Compl. ¶¶ 42, 45-50. Thus, Plaintiff has not demonstrated that it is likely to succeed on the merits of these claims.

## IV.    The Public Interest and the Equities Strongly Favor Defendants

The final two factors required for preliminary injunctive relief—a balancing of the harm to the opposing party and the public interest—merge when the Government is the opposing party. *See, e.g.*, *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Colo. Wild Horse v. Jewell*, 130 F. Supp. 3d 205, 220-21 (D.D.C. 2015); *Pursuing Am.'s Greatness v. Fed. Election Comm'n,* 831 F.3d 500, 511 (D.C. Cir. 2016) ("[T]he government's interest is the public interest."). Courts are to give the government "the widest possible latitude in the dispatch of its own affairs." *Sampson v. Murray*,

415 U.S. 61, 83 (1974). Courts must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-13 (1982).

Here, Plaintiff argues that it will suffer irreparable harm if it is forced to certify compliance with Executive Orders 14151 and 14173 but, as demonstrated above, there is no evidence that Plaintiff is at imminent risk of losing funds or that it is being forced to make a false statement that will expose it to liability under the False Claims Act. On the other hand, Defendants are legally entitled to make decisions about the disbursement of their federal grants. *See, e.g.*, 42 U.S.C. §§ 5001(a), 5011(a), 5013(a), 5022, 12571(a). Also, "it is in the public interest to deny injunctive relief when the relief is not likely deserved under law." *Hubbard v. United States,* 496 F. Supp.2d 194, 203 (D.D.C. 2007) (quoting *Qualls v. Rumsfeld,* 357 F. Supp.2d 274, 287 (D.D.C. 2005)); *see also Serono Labs., Inc. v. Shalala,* 158 F.3d 1313, 1326 (D.C. Cir. 1998) ("The final preliminary injunction factor, the public interest, . . . is inextricably linked with the merits of the case."). As demonstrated above, Plaintiff is not likely to succeed on the merits.

Accordingly, Plaintiff has not met its burden of establishing "that the balance of equities tips in [their] favor, and that an injunction is in the public interest" and therefore, Plaintiffs' motion should be denied. *See Winter*, 555 U.S. at 20.

## V. Plaintiff Should Be Ordered to Post Security In Connection With Any Temporary Injunctive Relief.

For the reasons stated above, Defendants submit that the Court can and should deny Plaintiff's motion in its entirety. However, should the Court be inclined to order any injunctive relief, the Court should also order Plaintiff to post security. Under Federal Rule of Civil Procedure 65(c), the Court may issue a preliminary injunction "only if the movant gives security" for "costs and damages sustained" by Defendants if they are later found to "have been wrongfully enjoined."

Fed. R. Civ. P. 65(c). In the event the Court issues an injunction here, the Court should require Plaintiffs to post an appropriate bond commensurate with the scope of any injunction. *See DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999) (stating that Rule 65(c) places "broad discretion in the district court to determine the appropriate amount of an injunction bond"). Particularly given that Plaintiff's Motion appears to be requesting that the Court order Defendants to disburse an unenumerated amount of grant funds, the Court should consider the amount of any proposed disbursement in determining the amount of bond to require from Plaintiff.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's

Motion.

Dated: April 4, 2025                    Respectfully submitted,
       Washington, DC

                                               EDWARD R. MARTIN, JR., D.C. Bar #481866
                                               United States Attorney

                                       By: _____ */s/ Sian Jones* _____
                                             SIAN JONES, D.C. Bar # 1024062
                                             Assistant United States Attorney
                                             601 D Street, NW
                                             Washington, D.C., 20530
                                             (202) 252-2578

                                       *Attorneys for the United States of America*